STATE OF NORTH CAROLINA v. DANNY RAY BASS

No. 35

(Filed 2 June 1981)

1. **Criminal Law § 60.5— sufficiency of fingerprint evidence**

When the State relies on fingerprints found at the scene of the crime, in order to withstand motion for nonsuit, there must be substantial evidence of circumstances from which the jury can find that the fingerprints could have been impressed only at the time the crime was committed.

2. **Burglary and Unlawful Breakings § 5.1; Criminal Law § 60.5— insufficient fingerprint evidence**

In a prosecution for first degree burglary, second degree rape and felonious larceny in which the State relied on fingerprint evidence, the State failed to offer substantial evidence that defendant's fingerprints could have only been imprinted at the time the crimes charged were committed, and defendant's motion for nonsuit should have been allowed, where the State's evidence established only that four latent prints found on a window screen of the house in which the crimes charged were committed had eleven points of similarity with known inked impressions of defendant's prints, no prints of defendant were found inside the house, and when informed of the presence of his fingerprints at the scene and asked why they were there and if he entered the house, defendant responded that he was not going to say he did and he was not going to say he didn't; defendant explained the presence of the prints and clarified his ambiguous statement to the officers by testifying that he broke and entered the home and committed a larceny therein three or four weeks before the crimes charged were committed, and the victim and an officer verified that such a break-in had occurred; and the State offered no explanation of its own for the presence of defendant's prints and no additional evidence which connected defendant to the crimes.

APPEAL by defendant pursuant to G.S. 7A-27(a) and 7A-31(b)(4) from judgments entered by *Martin (John C.), J.,* at the 3 October 1980 Session of DURHAM Superior Court.

At the 29 October 1979 Session of Durham Superior Court presided over by Farmer, J., defendant was convicted of first degree burglary, second degree rape and felonious larceny. Defendant failed to appear for sentencing after the verdicts were returned. Prayer for judgment was continued until such time as he could be apprehended and brought before the presiding judge of Durham Superior Court for sentencing. This was accomplished almost a year later. Defendant was sentenced by the then presiding judge to life imprisonment for the first degree burglary,

twenty to forty years imprisonment for the second degree rape and ten years imprisonment for the felonious larceny. Defendant appealed the burglary conviction to this Court, and his motion to bypass the Court of Appeals in the larceny and rape convictions was allowed.

Evidence for the State tends to show the following facts:

About 11 p.m. on 23 June 1979, Linda Stephens returned to her home at 304 Walton Street in Durham. She turned on the radio, lay down on her bed and went to sleep, leaving the lights on and the windows open because of the heat. Later, she was awakened by a man on top of her having intercourse with her. The lights were off and the radio volume was turned up. According to the corroborating testimony of an investigating officer, Stephens "stated that first she thought it may have been her boyfriend but then she began to realize the subject was more muscular than her boyfriend." The couple rolled off the bed and the man ran out the bedroom door and out of the house. Stephens watched him run down the driveway and across the front lawn. She called her boyfriend who advised her to call the police, which she did. The police arrived at approximately 4 a.m. and in their investigation discovered $10 was missing from her purse. She described her assailant as a black male in his twenties with a beard, soft Afro, muscular shoulders, five feet six inches to five feet eight inches tall and weighing 160 to 165 pounds. The police took the bed sheets and a nightgown which had stains on it. A pelvic examination of Stephens the next morning revealed the presence of sperm. Blood and pubic hair samples and fingernail clippings were taken from Stephens.

A forensic serologist tested blood samples provided by defendant and Stephens and tested stains from Stephens' nightgown. The serology tests revealed Stephens and Bass were blood group O secretors and the stains on the nightgown consisted of vaginal and seminal secretions which were from a group O secretor. On cross-examination, the serologist testified these tests were inconclusive and that while the stain on the nightgown could have come from Stephens and defendant, it was not limited to that combination but in fact could have come from the entire population. The serologist also examined the fingernail clippings and the bed sheets. These items failed to reveal anything of significance.

In the course of investigating the crime the next day, an officer taking photographs of the outside of the house noticed a window partly open on the left side of the house and a screen hanging from the window. A latent print search revealed one print on the outside portion of the screen frame and three prints on the inside of the frame. No prints were found inside the house on any items known to have been touched by the assailant. An expert in the field of fingerprint analysis found eleven points of similarity between the latent print on the screen and the known inked impressions of defendant's prints. The State's witnesses testified that fingerprints can last for months or even years.

Defendant was arrested on 26 June 1979 and, after being advised of his *Miranda* rights, was questioned about the crimes committed at 304 Walton Street on 23 June. He denied committing the break-in, rape and larceny. Defendant told the officers he had been to two parties on the night in question and had not been at the crime scene or with the prosecuting witness. When advised that his fingerprints were found on a window screen at the crime scene, he couldn't explain why they were there. When asked if he had gone in the house, he stated, "I don't know. I am not going to say I did and I am not going to say I didn't."

At the close of the State's evidence, defendant's motion for dismissal of all charges by way of nonsuit was denied. Defendant then took the stand and testified in his own behalf as follows:

He broke into the house at 304 Walton Street three or four weeks before 23 June 1979 and took a CB radio and tape recorder. At the time of that break-in, he attempted to gain entry through the window on the left side of the house where his fingerprints were found. He removed the screen and found the window locked. He then replaced the screen and went to the back of the house and broke out a kitchen window through which he entered by climbing up on a trash can. He denied ever returning to the Stephens home again and stated that on the night in question he was at a party with friends. Defendant is five feet ten inches tall, nineteen years old, and weighs 185 pounds. At the time of his arrest he had a goatee and mustache. He admitted committing several breakings and enterings while he was a juvenile.

Defendant rested his case and renewed his nonsuit motion which was again denied. The State presented the following rebuttal evidence:

A police officer, who investigated a break-in on 23 May 1979 at 304 Walton Street, testified he observed a broken window on the rear side of the house with a garbage can beneath the window on the outside. Shoe prints, smaller than a size eight, were found on the ground and on top of the garbage can. He checked all the windows in the house and saw no visible evidence of any other mode of entry. As of the date of defendant's trial, no one had been prosecuted for the 23 May break-in.

Stephens testified that on 23 May 1979 she observed the back window broken and the screen of the back door torn. A jar of sea monkies kept in the window was outside on the ground. She observed child size prints on the ground. All other windows and doors were locked. A tape player and a CB radio were missing, as was $15 of her child's money.

Defendant again renewed his motion for nonsuit which was denied. The case was submitted to the jury which found defendant guilty of the crimes charged. Sentences were ultimately imposed and defendant appealed.

*Rufus L. Edmisten, Attorney General, by William W. Melvin, Deputy Attorney General; Jane P. Gray, Associate Attorney, and William B. Ray, Assistant Attorney General, for the State.*

*Samuel Roberti, attorney for defendant appellant.*

HUSKINS, Justice.

The controlling question on this appeal is whether the trial court erred in overruling defendant's motion for judgment as of nonsuit. We hold the evidence insufficient to withstand defendant's motion for nonsuit.

A motion to nonsuit requires the trial court to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find the offense charged has been committed and that

defendant committed it, the motion for nonsuit should be denied. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968). Evidence offered by the defendant is considered only to the extent it is favorable to the State or for the purpose of explaining or making clear the State's evidence, insofar as it is not in conflict therewith. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866 (1971); *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971).

Defendant challenges the sufficiency of the identification evidence to withstand his motion for nonsuit and carry the case to the jury. The only evidence tending to show defendant was ever at the scene of the crime is four fingerprints found on the frame of a window screen on the Stephens home and identified as belonging to defendant. The State produced no evidence tending to show when they were put there, and testimony by State's witnesses was to the effect that fingerprints can last for months or even years. Defendant offered an incriminating explanation of how the prints came to be there. No other evidence connected him with the crime or its scene. The victim was unable to identify defendant as her assailant. She described her assailant as a black male, in his twenties, five feet five inches to five feet eight inches tall with a beard, soft Afro, muscular shoulders and weighing 160 to 165 pounds. Defendant was described in the record as nineteen years of age, five feet ten inches tall, with a goatee and mustache and weighing 185 pounds. The physical and scientific evidence presented, other than the fingerprints, fails to connect defendant with the crime. Blood tests were inconclusive. No hair samples could be matched. No fingerprints were found inside the house and, in particular, no fingerprints were found on objects inside the house which the assailant was known to have touched, such as the light switch and door knob. Our inquiry thus becomes whether the fingerprint evidence in this case, taken in a light most favorable to the State, is sufficient to take the case to the jury.

[1] This Court has considered the sufficiency of fingerprint evidence to withstand a motion of nonsuit in a number of cases. *See, e.g., State v. Scott*, 296 N.C. 519, 251 S.E. 2d 414 (1979); *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977); *State v. Miller*, 289 N.C. 1, 220 S.E. 2d 572 (1975); *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. Foster*, 282 N.C. 189, 192 S.E. 2d 320

(1972); *State v. Smith*, 274 N.C. 159, 161 S.E. 2d 449 (1968); *State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291 (1951); *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572 (1951); *State v. Reid*, 230 N.C. 561, 53 S.E. 2d 849, *cert. denied* 338 U.S. 876, 94 L.Ed. 537, 70 S.Ct. 138 (1949); *State v. Minton*, 228 N.C. 518, 46 S.E. 2d 296 (1948); *State v. Helms*, 218 N.C. 592, 12 S.E. 2d 243 (1940); *State v. Huffman*, 209 N.C. 10, 182 S.E. 705 (1935); *State v. Combs*, 200 N.C. 671, 158 S.E. 252 (1931). These cases establish that when the State relies on fingerprints found at the scene of the crime, in order to withstand motion for nonsuit, there must be substantial evidence of circumstances from which the jury can find that the fingerprints could have been impressed only at the time the crime was committed. As stated in *State v. Miller, supra*, and quoted in *State v. Scott, supra*:

> These cases establish the rule that testimony by a qualified expert that fingerprints found at the scene of the crime correspond with the fingerprints of the accused, when accompanied by substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed, is sufficient to withstand motion for nonsuit and carry the case to the jury. The soundness of the rule lies in the fact that such evidence logically tends to show that the accused was present and participated in the commission of the crime.
>
> What constitutes substantial evidence is a question of law for the court. What the evidence proves or fails to prove is a question of fact for the jury.

289 N.C. at 4, 220 S.E. 2d at 574, *quoted in*, 296 N.C. at 523, 251 S.E. 2d at 417.

[2] An analysis of the evidence in the present case in light of the foregoing principles reveals that the State did not offer substantial evidence that the prints could only have been placed on the window screen frame at the time of the 23 June break-in, larceny and rape. The State's evidence establishes only these facts and circumstances: (1) four latent prints found on a window screen of the house in which the crimes charged were committed had eleven points of similarity with known inked impressions of defendant's prints; (2) no prints of defendant were found inside the house and (3) when informed of the presence of his fingerprints at

State v. Bass

the scene and asked why they were there and if he entered the house, defendant responded, "I can't say that I did. I don't know. I am not going to say I did and I am not going to say I didn't." This evidence does not constitute "substantial evidence" that defendant's prints could only have been imprinted at the time the crimes charged were committed. The burden is not upon defendant to explain the presence of his prints but upon the State to prove his guilt. *State v. Scott, supra.* Defendant's evidence at trial does, however, tend to explain the presence of the prints and clarifies the ambiguous statement to the investigating officers in this way: He was on the premises three or four weeks before and he, at that time, broke and entered the home and committed a larceny. Stephens and an officer verified a 23 May 1979 break-in which closely followed in detail the break-in defendant admitted committing. Defendant offered an explanation for the presence of the prints which, if true, exculpated him of the 23 June offenses. The State has offered no explanation of its own for the presence of the prints and no additional evidence which connects defendant to the crime.

This case should be contrasted with *State v. Miller, supra,* where fingerprint evidence was held sufficient to withstand a nonsuit motion. In that case, defendant's thumbprint was found on a vending machine lock at a crime scene. No other fingerprints were found at the scene. When informed of the presence of his fingerprint, *he denied ever being on the crime scene.* In the present case, defendant admits to a specific time when he was in the building which explains the presence of the prints and destroys the State's case absent some evidence tending to show that the prints could only have been impressed at the time the crimes charged were committed, thus raising a question for the jury.

The present case is more analogous to *State v. Scott, supra,* wherein this Court reversed the denial of a nonsuit motion. In that case, the only evidence tending to show defendant was ever in the home where an attempted robbery and murder occurred was a thumbprint on a metal box found in the den on the day the crimes were committed. The defendant had never been seen in the home and only family members handled the metal box. We held this did not constitute substantial evidence that defendant's thumbprint could only have been imprinted on the box during the course of the crimes, since the State's only witness who resided

at the scene of the crime testified she worked in a nearby city five days each week and did not have an opportunity to observe during the weekdays who came to visit or do business with the deceased. The Court concluded this evidence was sufficient to raise a strong suspicion of defendant's guilt but insufficient to remove the issue from the realm of suspicion and conjecture. The circumstantial evidence in the present case is even less substantial than the evidence offered in *Scott*.

Defendant's motion to nonsuit should have been allowed. The case is remanded to the Superior Court of Durham County for entry of a judgment of nonsuit. Of course, if the State so elects, defendant may be tried for the felonies he testified on oath he committed on 23 May 1979 at the Stephens home.

Reversed.