STATE OF NORTH CAROLINA v. ALEXANDER WILLIAMS

No. 8112SC1191

(Filed 20 July 1982)

**Narcotics § 4.4— constructive possession—failure to show control over premises**
　　The State's evidence was insufficient to show that defendant occupied or
　　was in control of the premises in question and that he was thus in constructive
　　possession of heroin found in an abandoned house behind a dwelling where it
　　tended to show only that officers who obtained a warrant to search the
　　premises had seen defendant in front of the dwelling on four occasions during
　　a two-week period prior to the execution of the warrant; a mailbox outside the
　　dwelling displayed the names "Mr. and Mrs. Williams"; officers found in the
　　dwelling a prescription bottle and bills for electricity and trash service bearing
　　defendant's name or a name similar to it; officers found in the abandoned
　　house a plastic bag containing another plastic bag with heroin therein and a
　　third plastic bag with tinfoil squares therein; and defendant's fingerprint was
　　on one of the tinfoil squares.

　　Judge HEDRICK dissenting.

APPEAL by defendant from *Herring, Judge.* Judgment
entered 1 June 1981 in Superior Court, CUMBERLAND County.
Heard in the Court of Appeals 27 April 1982.

From a jury verdict finding the defendant, Alexander Wil-
liams, guilty of possession of heroin with intent to sell and deliver
and a judgment committing defendant to prison for ten to fifteen
years, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General
David Roy Blackwell, for the State.*

*Barrington, Jones, Witcover & Armstrong, P.A., by Carl A.
Barrington, Jr., for defendant appellant.*

BECTON, Judge.

I

About midnight on 18 August 1980, two Fayetteville City
Police officers, B. E. Hyde and Roy Baker, observed the defend-
ant on the porch at 800 Deep Creek Road from about 60 feet away
as they drove by the house. These officers had also observed the
defendant in front of that dwelling on three occasions during the

two weeks preceding 18 August 1980; however, they had never seen defendant inside the house. A mailbox outside the dwelling displayed the name "Mr. and Mrs. Williams."

Having been informed that Gloria Walker had sold heroin to an undercover buyer at 800 Deep Creek Road on 18 August 1980, the officers, on the evening of 19 August 1980, obtained a search warrant and searched the dwelling. When the officers arrived, six females, including Gloria Walker, were present. The defendant was not at 800 Deep Creek Road on the evening of 19 August 1980.

The dwelling at 800 Deep Creek Road contained three bedrooms, a living room, a kitchen and dining room combination, and a bath. When the officers entered, they saw "needles, and syringes, and cookers, and other paraphernalia laying on the table in the dining room. . . ." During the search of one of the back bedrooms, the officers also discovered (i) a Public Works Commission (PWC) (local electric company) bill dated 23 June 1978 bearing the name, Alex Williams; (ii) a PWC bill dated 24 June 1980, bearing the name, Alex Williams; (iii) a Travelers Trash Service bill dated 26 June 1980, bearing the name, Alea Williams; (iv) a prescription bottle of non-controlled pills dated 26 September 1979 and 26 March 1980, bearing the name, Alexander Williams.

The officers also searched an old abandoned house located behind the dwelling at 800 Deep Creek Road. Officer Hyde testified: this is a "four-room, delapidated house that is about to fall down . . . there is no security at all, no doors and no windows." While searching the old abandoned house, the officers found, amid the trash and junk, a plastic bag containing two smaller plastic bags. One of the smaller plastic bags contained a substance later identified as 2.7 grams of heroin, at a concentration of 12%; the other smaller plastic bag contained 12 to 15 small tinfoil squares, but it contained no traces of any controlled substance.

S. R. Jones, an expert in latent fingerprint comparison, testified that he lifted several latent partial prints from the pieces of tinfoil in the second smaller bag. Only one print was identifiable. Basing his "entire opinion on less than 20% of the entire thumbprint," he testified that the latent print on one of the pieces of tinfoil was made by the defendant.

After the State rested its case, the defendant moved for a directed verdict of not guilty. When that motion was denied, defendant chose to offer no evidence and to renew his motion for a directed verdict. That motion was also denied. We now discuss defendant's assignments of error based on the denial of his motions.

II

Defendant argues that the trial court erred by failing to grant his nonsuit motions and by failing to set the verdict aside. For the reasons that follow, we agree.

Evidence which raises merely a surmise, conjecture or suspicion of guilt (even though the suspicion so aroused by the evidence is strong) is insufficient to overcome a nonsuit motion. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967); *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971). At the nonsuit stage, the trial court has to determine whether a reasonable inference of the defendant's guilt of the crime charged can be drawn from the evidence. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980); *State v. Rowland,* 263 N.C. 353, 357, 139 S.E. 2d 661, 665 (1965).

We look first at the evidence and then the case law which compels the conclusion that the evidence in this case is insufficient to be submitted to the jury.

During the course of the trial, reference was made to the defendant on only a few occasions. First, Hyde testified that he saw the defendant in the front yard of 800 Deep Creek Road on four occasions prior to the time the search warrant was executed, and that the mailbox in front of the dwelling displayed the name, Mr. and Mrs. Williams. Second, Hyde testified that during the search of 800 Deep Creek Road on 19 August 1980, he found a prescription bottle of non-controlled pills and three documents bearing, in one form or another, the defendant's name or a name similar to his. Third, the latent fingerprint expert testified that defendant's fingerprint was found on one of twelve to fifteen small pieces of tinfoil found in a plastic bag in the abandoned house behind the dwelling at 800 Deep Creek Road.

Significantly, the State failed to show that defendant owned or occupied the dwelling house. There was no evidence that de-

fendant had any clothing or other personal effects in the dwelling. Similarly, no latent prints of the defendant were found in the dwelling, and there was no evidence that defendant was ever *in* the house, as opposed to his being seen four times in the front yard or on the porch of the house. Further, there was no evidence that the defendant was ever in the abandoned house.

The fact that defendant was present at the dwelling on four occasions during a two-week period prior to the execution of the search warrant does not remove the "issue from the realm of suspicion and conjecture." *State v. Scott,* 296 N.C. 519, 526, 251 S.E. 2d 414, 419 (1979). *See also State v. Cutler.* Because the State failed to establish ownership in the defendant, the jury could only guess whether defendant, a relative, a friend, or an acquaintance of defendant *owned* the dwelling at 800 Deep Creek Road. If the jurors guessed that defendant owned the premises, they would have to guess again about whether defendant *occupied* the dwelling or rented it to one or more of the six women found in the residence or to others. And even if the defendant did not own or occupy the building, the jury would have to guess again about whether defendant was a user of heroin, as opposed to a possessor with intent to sell, who frequented the dwelling house to purchase heroin for his use. Simply put, there is no evidence that the defendant either actually or constructively, possessed or exercised any degree of control over the dwelling or the open abandoned shed behind the dwelling and, *a fortiori,* the heroin found therein, so as to submit to the jury a charge of possession with intent to sell heroin.

The State cites six drug cases in support of its contention that a reasonable inference of defendant's guilt can be drawn from the facts in this case. Those cases are all distinguishable.

First, we agree with the cited quote in *State v. Allen,* 279 N.C. 406, 410, 183 S.E. 2d 680, 683 (1971), *quoting People v. Galloway,* 28 Ill. 2d 355, 358, 192 N.E. 2d 370, 372 (1963) (emphasis added).

> "Where narcotics are found on the premises *under the control* of the defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of

narcotics, absent other facts which might leave in the minds of the jury . . . a reasonable doubt as to his guilt."

With this statement of the law we have no quarrel. In this case, however, there is no evidence to show that the premises in question were under the control of the defendant. In *State v. Walsh,* 19 N.C. App. 420, 425-26, 199 S.E. 2d 38, 42, *cert. denied,* 284 N.C. 258, 200 S.E. 2d 658 (1973), our Court held that occupancy of a house with others was sufficient to raise an inference of possession. In the *Walsh* case, however, occupancy was established. Similarly, in *State v. McDougald,* 18 N.C. App. 407, 197 S.E. 2d 11, *cert. denied,* 283 N.C. 756, 198 S.E. 2d 726 (1973), there was no question concerning occupancy. McDougald was present when the search was conducted, and there was evidence that he had been living there for several years. In *State v. Baxter,* 285 N.C. 735, 208 S.E. 2d 696 (1974), the defendant and his wife had lived in the apartment searched for approximately three years. Although the defendant's wife was present, the defendant was temporarily absent when the officers conducted the search. Again, there was no question concerning ownership or occupancy. Moreover, drugs were found in a dresser drawer under men's underclothing, and in men's clothing in the closet.

Two cases cited by the State involved contraband found some distance from the home in outbuildings which were not secure. Those cases are also distinguishable. In *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972), the defendant lived in a combination residence and store in rural Beaufort County. The officers searched the residence-store and a pigpen located about twenty yards behind defendant's home. They found marijuana in defendant's bedroom and a box of marijuana leaves in a shed in the pigpen. Our Supreme Court specifically noted that defendant's residence-store was in "rural Beaufort County." As can be seen, there was no question of ownership or occupancy in the *Spencer* case. The court said:

> In instant case, the pig shed where the marijuana was found was located approximately twenty yards from and directly behind defendant's residence. Defendant had been seen on numerous occasions in and around the outbuildings directly behind his house. *Thus, when considered with the fact that marijuana seeds were found in defendant's bedroom,* this

evidence raises a reasonable inference that defendant exercised custody, control, and dominion over the pig shed and its contents.

*Id.* at 129-30, 187 S.E. 2d at 784 (emphasis added). In *State v. Owens*, 51 N.C. App. 429, 276 S.E. 2d 478 (1981), this Court concluded that the circumstances "point unerringly to defendant [because] defendant, by his own evidence, has directed suspicion away from the occupant of the nearby trailer, leaving himself as the only likely constructive possessor of the marijuana patch." *Id.* at 432, 276 S.E. 2d at 480. Interestingly enough, the defendant in *Owens* would have won his case had he not put on evidence. The *Owens* Court said:

> The defendant moved to dismiss upon the close of the State's evidence. G.S. 15A-1227. The trial court erred in denying the motion because there was not substantial evidence that defendant was in constructive possession of the patch of marijuana plants located near his trailer. The arresting officer testified that he did not know whether the other trailer, beside the one occupied by defendant, was occupied. The worn path leading from the marijuana patch ended in grass between the two trailers, some 10 or 15 feet behind the two trailers, and the path or trail would have been easily accessible to both defendant and an occupant of the other trailer if the other trailer were occupied.

*Id.* at 431, 276 S.E. 2d at 479.

Having distinguished the drug cases cited by the State, we turn to the fingerprint evidence which the State contends is sufficient to take the case to the jury. "The fact that finger-prints corresponding to those of an accused are found in a place where a crime was committed is without probative force unless the circumstances are such that the finger-prints could have been impressed only at the time when the crime was perpetrated." *State v. Minton*, 228 N.C. 518, 521, 46 S.E. 2d 296, 298 (1948). Moreover, "[t]he burden is not upon the defendant to explain the presence of his fingerprint but upon the State to prove his guilt." *State v. Scott*, 296 N.C. at 526, 251 S.E. 2d at 419. Although the defendant's thumbprint may have been impressed upon the foil when it was purchased, handed to someone or thrown away, the jury *could* speculate that it was placed there when the defendant

cut the foil into squares. That, however, would not remove the case from the realm of speculation or conjecture, because there is no evidence of when, or by whom, the heroin was placed in the separate plastic bag.

In *State v. Bass*, 303 N.C. 267, 272-73, 278 S.E. 2d 209, 213 (1981), a burglary, rape and larceny case,

> [t]he State's evidence [establishes] only these facts and circumstances: (1) four latent prints found on a window screen of the house in which the crimes charged were committed had eleven points of similarity with known inked impressions of a defendant's prints; (2) no prints of defendant were found inside the house; and (3) when informed of the presence of his fingerprints at the scene and asked why they were there and if he entered the house, defendant responded, "I can't say that I did. I don't know. I am not going to say I did and I am not going to say I didn't."

Viewing this evidence in the light most favorable to the State, our Supreme Court said: "This evidence does not constitute 'substantial evidence' that defendant's prints could only have been imprinted at the time the crimes charged were committed." *Id.*, 278 S.E. 2d at 213. The Court noted further, citing *State v. Miller*, 289 N.C. 1, 4, 220 S.E. 2d 572, 574 (1975), that "[w]hat constitutes substantial evidence is a question of law for the court. What the evidence proves or fails to prove is a question of fact for the jury." 303 N.C. at 272, 278 S.E. 2d at 213.

In this case, we find that there was insufficient evidence to submit the possession of heroin with intent to sell charge to the jury. Consequently, the judgment of the trial court is

Reversed.

Judge HILL concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

In my opinion the evidence is sufficient to require submission of the case to the jury and to support the verdict. Although the

majority points out that the mailbox contained the names of "Mr. and Mrs. Williams;" that a "Public Works Commission (PWC)" bill was found in the back bedroom with the name of "Alex Williams" on it; and that "a Travelers Trash Service bill dated 26 June 1980, bearing the name, Alex Williams" on it, it ignores these significant bits of evidence in arriving at the conclusion that the evidence was insufficient to raise an inference that the defendant was in control of the premises and thus in constructive possession of the heroin. When all of the evidence is considered in the light most favorable to the State, as we are bound to do, the cases cited and relied upon by the State are not so · readily distinguishable as the majority indicates.

I vote to find no error.