An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-693

Filed 2 July 2025

Guilford County, Nos. 19CRS068242-400, 19CRS068243-400, 19CRS068244-400, 22CRS026016-400

STATE OF NORTH CAROLINA

v.

JOEL NOAH EMMANUEL JENKINS.

Appeal by Defendant from judgment entered on 13 July 2023 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals on 9 April 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Michael T. Wood, for the State.*

> *Appellate Defender Glenn G. Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for the Defendant.*

WOOD, Judge.

Joel Noah Emmanuel Jenkins ("Defendant") appeals from judgment entered upon jury verdicts finding him guilty of first-degree murder; murder of an unborn child; assault with a deadly weapon with intent to kill inflicting serious injury; and discharging a firearm into occupied property. Defendant makes two arguments on

appeal. First, the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Second, the trial court committed plain error by allowing testimony regarding a ballistics report, in violation of the Confrontation Clause of the Sixth Amendment and Article I, § 23 of the North Carolina Constitution. For the reasons stated herein, we hold Defendant received a fair trial free from error.

## I. Factual and Procedural Background

At 11:00 p.m. on 6 August 2018, a drive-by shooting occurred at 701 Thissell Street in High Point ("Thissell Street shooting"). Anastasia Ray ("Anastasia"), her uncle Corey Ray ("Corey"), her cousin Shaterrika McNeil ("McNeil"), and her mother's stepfather John West McManus, Jr. ("McManus") were all present in the home on this evening.

Prior to the shooting at 10:00 p.m., McNeil sat on the porch with Corey, until she went inside and sat next to Anastasia while she was on Facebook Live. McNeil testified Hykeem Simmons ("Simmons") virtually joined Anastasia's Facebook Live, but neither she nor Anastasia conversed with Simmons. McNeil told Anastasia to log off Facebook Live when Simmons joined because he was on "the opposite side of someone [they] knew." When Anastasia ended the Facebook Live, McNeil left the room and soon thereafter heard seven or more shots being fired. McNeil went to the front door to check on Corey who had been shot in the left buttocks. She then went back into the house to find Anastasia who had been hit by a bullet that went through the wall of the house and into the back of her neck.

Officer A.M. Cotter ("Officer Cotter") of the High Point Police Department arrived at the scene where upon exit of her vehicle she smelled gunfire and saw Corey in the front yard of the home who was alert and speaking. McNeil poked her head out of the house and advised Officer Cotter she needed help inside for Anastasia. Officer Cotter immediately began to render aid to Anastasia upon finding her, noticing she was "visibly very pregnant." While the other officers that had arrived on scene continued to render aid to Anastasia, Officer Cotter exited the home to speak with her supervisor who instructed her to go to 809 Langford Avenue to "look for a suspect vehicle, which had been described as a white Jeep" by Corey, but she was unable to locate it. At the scene, investigators recovered nineteen shell casings and one live round which were sent for ballistics testing.

Anastasia and her unborn child were transported to the hospital and pronounced deceased at the hospital. Corey was also transported to the hospital with a non-fatal injury.

On 7 August 2018, a day after the shooting, officers received an anonymous tip about a white Dodge Avenger registered to Simmons and issued a BOLO ("be on the lookout") bulletin. Officers located the vehicle abandoned in a lot, and through the windows they could see a Ruger rifle, a tan Glock 9mm handgun, firearm magazines, and two pairs of gloves. A search warrant was obtained and executed on the vehicle, leading to Simmons arrest. Eventually, police obtained an arrest warrant for a second suspect, Jonas Thompson ("Thompson"), and arrested him on 26 August 2018.

The two firearms found in the vehicle were sent to the Greensboro Police Department ("GPD") for the first round of ballistics testing and were eventually sent to the State Crime Lab for a second round of testing. The GPD report indicated both the rifle and the handgun produced shell casings matching those recovered from the Thissell Street shooting. The State Crime Lab conducted an independent examination of the rifle and came to the same conclusions as the GPD report. The State Crime Lab also concluded the same test-fire casings from the handgun matched certain spent casings recovered from the Thissell Street shooting. It did not conduct an independent test-fire of the handgun. The State Crime Lab analysts understood other departments completed the handgun test-fire and only testified at trial to conclusions they made based on their independent tests.

Five months after the Thissell Street shooting, on 27 January 2019, another drive-by shooting took place near Vail Street in High Point ("Vail Street shooting"). Police recovered approximately twenty shell casings from the Vail Street shooting, including 9mm casings. No one was charged in connection with the Vail Street shooting.

Using the National Integrated Ballistic Information Network ("NIBIN"), a police computer database that records and compares shell casings found at crime scenes, police concluded shell casings recovered at the Thissell Street shooting matched some of the casings recovered from the Vail Street shooting. This confirmed a third firearm had been involved at the Thissell Street shooting because the two

- 4 -

firearms taken from Simmons' vehicle immediately following the Thissell Street shooting, were in police custody at the time of the Vail Street shooting. State Crime Lab forensic scientist Jessica Pappas ("Pappas") confirmed these findings through her own independent examination of the ballistics evidence.

On 12 February 2019, Detective M.W. Blackman ("Detective Blackman") of the High Point Police Department interviewed Corey for a third time, resulting in an arrest warrant for Defendant. Police took Defendant into custody the following day. Defendant waived his Miranda rights, and Detective Blackman subsequently interviewed him. Detective Blackman testified at trial that Defendant told him during this interview he was at 809 Langford Avenue, the home of his then high school girlfriend, from 11:30 a.m. to around midnight on the day of the Thissell Street shooting. Defendant further stated to Detective Blackman that he knew Simmons, he was with Simmons on the day of the Thissell Street shooting, and that Thompson is his cousin. Detective Blackman stated he told Defendant he knew he had been shooting from his vehicle at the Vail Street shooting, to which Defendant responded, "that's the only thing that you've got. That's the only thing I did. That's the only thing like that you could say I did."

At the police station, investigators obtained Defendant's DNA sample. Forensic scientists then compared Defendant's DNA sample to DNA evidence collected from the two firearms recovered from the vehicle registered to Simmons. Forensic scientists determined Defendant's DNA to be an 80 percent contributor to

the sample left on the grip of the handgun, along with partial DNA from two other unknown contributors. At trial, experts testified that the DNA on the handgun was 21.1 quintillion times more likely to have originated from Defendant and two unknown, unrelated individuals, rather than originating from three unknown, unrelated individuals. Forensic scientists, by the same process, concluded Simmons' DNA was a main contributor to the sample on the rifle, with DNA from two other unknown contributors. The results indicated that it was 33.8 thousand times more likely the rifle DNA originated from Simmons and two unknown, unrelated individuals, rather than if they had originated from three unknown, unrelated individuals.

At trial, Defendant asked his former high school girlfriend, Odyssey Lindsay ("Lindsay"), to corroborate his alibi. Lindsay testified that on the day of the Thissell Street shooting Defendant was at her house, 809 Langford Avenue. She stated Defendant was at her house from "around noon" until approximately 11:30 p.m. However, on cross-examination, the State revealed discrepancies between Lindsay's testimony and Defendant's interview with Detective Blackman. Defendant told Detective Blackman that police drove by the house after the shooting, whereas Lindsay did not explicitly recall police passing by that day but said it was normal for police to drive by while patrolling the neighborhood. Defendant also stated Thompson and Simmons were at 809 Langford Avenue the day of the homicide. However, Lindsay testified she did not remember whether either was present. Lindsay stated

she "[didn't] have [her] eyes on [Defendant] every second [that night]," such as when Defendant might have left to go use the bathroom.

At trial, Detective Blackman testified that the firearms found in Simmons' vehicle were initially sent to GPD for testing. The first round of testing was conducted by GPD analyst Karen Weimorts ("Analyst Weimorts"), who did not testify at trial. Instead, Pappas from the State Crime Lab testified regarding her independent ballistics testing of both the Thissell Street and Vail Street shootings shell casings. Pappas' forensic report was admitted as State's Exhibit 18 and recounted in her testimony. Pappas noted that she performed independent tests and did not rely on the report or conclusions made by the GPD. Detective Blackman in his testimony mentioned the ballistics report in response to being asked if he received it, stating "[b]allistics had indicated that the firearms initially seized from [] Simmons' [sic] vehicle were those that produced the shell casings on the scene at 701 Thissell [Street]." Defendant did not object or move to strike this testimony.

Defendant was found guilty of first-degree murder, murder of an unborn child, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a firearm into an occupied property. The jury relied on the theories of acting in concert and felony murder for their verdict of first-degree murder. The trial court consolidated all four convictions into a single judgment and imposed an active sentence of life without the possibility of parole. On 17 July 2023, Defendant entered his notice of appeal.

## II. Analysis

Defendant asserts two arguments on appeal. First, Defendant contends the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Second, Defendant contends the trial court plainly erred by allowing part of Detective Blackman's testimony believing it to be a violation of the Sixth Amendment Confrontation Clause and Article I, § 23 of the North Carolina Constitution. We examine each issue in turn.

### A. Defendant's Arguments Regarding the Motion to Dismiss

On appeal, "[t]his Court reviews the trial court's denial of a motion to dismiss *de novo.* Under a *de novo* review, [this] [C]ourt considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Reaves*, __ N.C. App. __, __, 911 S.E.2d 791, 794 (2025) (cleaned up).

In considering a defendant's motion to dismiss, "the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Summey,* 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013).

"[T]he trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v.*

*Miles,* 267 N.C. App. 78, 82, 833 S.E.2d 27, 30 (2019). Further, "[w]hen ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *State v. Fritsch,* 351 N.C. 373, 379, 526 S.E.2d 451, 455-56 (2000). It is well-established that "[i]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Blagg,* 377 N.C. 482, 489, 858 S.E.2d 268, 273 (2021).

"This Court must affirm the trial court's denial of a motion to dismiss if, when taking the evidence in the light most favorable to the State, the record 'discloses substantial evidence of all material elements constituting the offense for which the accused was tried.'" *Reaves*, __ N.C. App. at __, 911 S.E.2d at 794 (quoting *State v. McVay*, 287 N.C. App. 293, 296, 882 S.E.2d 598, 602 (2022)).

> The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances.

*State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918-19 (1993) (quoting *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988)).

## 1. Sufficiency of Evidence to Overcome Defendant's Motion to Dismiss

On appeal, Defendant does not make a specific challenge against any one element of the four charges against him. Instead, Defendant argues the trial court erred in denying the motion to dismiss because the evidence failed to *prove* he was involved in the Thissell Street shooting. Thus, the scope of the issue on appeal is limited to the element of identity of Defendant as the perpetrator of the offense. *See State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 756 (2008).

Defendant argues "the State's case supported only suspicion and conjecture, and was *insufficient to establish beyond a reasonable doubt* that [Defendant] was involved in the 6 August 2018 shooting . . . ." However, proving guilt *beyond a reasonable doubt* is not the standard the State must meet to prevail on a motion to dismiss. In this context, the bar is lower. "When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455-56. "Once the court decides that a reasonable inference of [a] defendant's guilt may be drawn from the circumstances, then 'it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy it beyond a reasonable doubt that the defendant is actually guilty.'" *Barnes*, 334 N.C. at 75-76, 430 S.E.2d at 919 (cleaned up).

Defendant claims only two portions of the evidence "even suggested" his involvement in the crimes: (1) Defendant being "involved in the separate Vail Street shooting on 27 January 2019, and that some of the cartridge casings obtained from

that location were likely fired by the same weapon that fired some of the cartridge casings obtained from [the] Thissell [Street shooting]," and (2) Defendant's "DNA was found as part of a mixture on the grip of the 9mm Glock that was retrieved from [] Simmons' car the day after the [Thissell Street] shooting." Defendant argues the inferences from the evidence suggesting his involvement in the crimes favor him regarding his motion to dismiss.

Regarding his admitted involvement in the separate Vail Street shooting, Defendant submits the weapon was never recovered and "it is far from clear who else may have been involved in the Vail [Street] shooting." Defendant also claims that (1) he was a passenger in the car involved in the Vail Street shooting, (2) he was a victim not a perpetrator in the Vail Street shooting, and (3) he was tested for gunshot residue regarding the Vail Street shooting and "[i]f that test had come back positive, [Detective] Blackman almost certainly would have said so."

Regarding his DNA found on the grip of the handgun retrieved from Simmons' vehicle the day after the Thissell Street shooting, Defendant claims Pappas could not confirm any of the 9mm cartridge casings came from that firearm because Pappas did not test-fire the recovered 9mm Glock herself and that "the strongest (and perhaps only) evidence to the contrary on this point may have been when [Detective] Blackman briefly referred to the testing performed by a non-testifying analyst, which may have shown a match between the Glock and the casings recovered from Thissell [Street]."

In contrast, the State argues that it presented "substantial evidence" that established a reasonable inference of Defendant's guilt on each of the offenses. Specifically, the State submitted the following evidence at trial: (1) during crime scene interviews Corey and McManus told police a white vehicle, described as an SUV or Jeep, and "them Southside boys," were involved; (2) Corey's interview provided police with enough information to issue an arrest warrant for Simmons; (3) officers received an anonymous tip about the vehicle involved in the shooting and issued a BOLO bulletin to other officers; (4) police found the white vehicle, which was registered to Simmons and recovered two firearms, a tan Glock 9mm handgun and a Ruger AR-style rifle; (5) ballistics testing of the shell casings recovered from the Thissell Street shooting indicated both weapons had been discharged at the shooting; (6) DNA expert analysis determined Defendant's DNA to be an 80 percent contributor to the sample left on the grip of the tan 9mm Glock, along with partial DNA from two other unknown contributors; (7) Defendant stated that he had known Simmons for years and admitted that he had been with Simmons on the day of the homicide; (8) Defendant also admitted that he was present at 809 Langford Avenue immediately after the homicide; (9) 809 Langford Avenue is the same address that witnesses McManus, Corey, and others put investigators onto after the homicide, and which officers surveilled that night; (10) ballistics experts testified that some of the spent shell casings recovered from the Vail Street shooting matched some of the spent shell casings found after the Thissell Street shooting; (11) Detective Blackman testified

that Defendant admitted to being present and involved in the Vail Street shooting in his initial interview; and, finally, (12) Detective Blackman's third interview with Corey revealed information immediately resulting in Defendant's arrest.

Defendant's arguments primarily concern the weight of the evidence adduced at trial, which is ultimately a question for the jury. Moreover, in the context of a motion to dismiss, Defendant is not entitled to an inference that evidence subject to different interpretations be construed in his favor. Contrary to Defendant's assertions, in evaluating a criminal defendant's motion to dismiss "the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Miles,* 267 N.C. App. at 82, 833 S.E.2d at 30 (quoting *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994)). Here, the State supplied substantial and sufficient evidence, when viewed in the light most favorable to the State, to overcome Defendant's motion to dismiss. Again, the State need only present evidence sufficient for jury consideration, and the State's evidence which included DNA and ballistics testing as well as witness and suspect interviews met that burden.

**2. DNA Touch Evidence**

Defendant argues the State did not present substantial evidence showing his DNA found on the 9mm Glock could have been left only at the time of the Thissell Street shooting, and this DNA evidence alone may be insufficient to defeat a motion

to dismiss.

This Court has held "[s]tatements by [a] defendant that he had never been at the crime scene are sufficient to show that a fingerprint lifted from the premises could have only been impressed at the time of the crime." *State v. Wade*, 181 N.C. App. 295, 299, 639 S.E.2d 82, 86 (2007). Defendant contends other opportunities were presented at trial where his DNA could have been transferred to the gun other than at the time of the shooting. Specifically, that he admitted to knowing Simmons since he was young and that on the day of the Thissell Street shooting "he smoked with [Simmons]" and if the gun was present while they were together, his DNA could have transferred at that time.

Defendant cites several cases applying the *Irick* rule to fingerprint evidence, asserting the same standard should be applied to the touch DNA evidence here. *State v. Bass*, 303 N.C. 267, 272, 278 S.E.2d 209, 212-13 (1981); *State v. Cross*, 345 N.C. 713, 717, 483 S.E.2d 432, 434-35 (1997); *State v. Todd*, 290 N.C. App. 448, 457-58, 892 S.E.2d 240, 248-49 (2023).

The special *Irick* rule for sufficiency of the evidence applies when fingerprint evidence stands alone, "requiring an inquiry about whether there is substantial evidence the fingerprint 'could only have been impressed at the time the crime was committed.'" *Todd*, 290 N.C. App. at 459, 892 S.E.2d at 249. However, when "fingerprint evidence does not stand alone" the normal sufficiency of evidence standard is applied. *Id.* at 457, 892 S.E.2d at 248.

- 14 -

The touch DNA evidence does not stand alone in this case. Here, the State presented ballistics evidence, eyewitness evidence, and the touch DNA evidence all connecting Defendant to the shooting as discussed above. Because the touch DNA evidence does not stand alone, the *Irick* rule does not apply and the State did not need to offer substantial evidence to show the DNA evidence could have only been transferred to the gun at the time of the Thissell Street shooting.

Taken in the light most favorable to the State and given the benefit of all reasonable inferences, we hold the trial court did not err by denying Defendant's motion to dismiss. The State presented sufficient evidence to allow the jury to decide whether Defendant was culpable in the 6 August 2018 Thissell Street shooting.

**B. Witness Confrontation.**

Defendant next argues the trial court committed plain error by allowing the following testimony by Detective Blackman in response to the state's questioning.

> Q. Do you know where the firearms that were seized from the vehicle were sent?
>
> [DB]. Initially Greensboro Police Department for ballistics testing.
>
> Q. On or about August 18 – and hold for – what was the purpose of you sending those guns to Greensboro?
>
> [DB]. To determine if those firearms were the ones that fired the shell casings located at the scene of the homicide.
>
> Q. And on or about August 18th, 2028, did you *receive a report back?*

- 15 -

[DB]. I did.

. . . .

Q. Had you received any ballistics reports or DNA reports as of this point?

[DB]. DNA, no. Ballistics had indicated that the firearms initially seized from Hykeem Simmons' vehicle were those that produced the shell casings on the scene at 701 Thissell [Street].

Defendant concedes he did not properly preserve this issue at trial and thus asks this Court to conduct plain error review. "Unpreserved error[s] in criminal cases . . . [are] reviewed only for plain error." *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012); N.C. R. App. P. 10(a)(4). "[The North Carolina Supreme Court] and the United States Supreme Court have emphasized that plain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error." *Lawrence*, 365 N.C. at 517, 723 S.E.2d at 333.

Under plain error review, Defendant must establish that (1) a fundamental error occurred at trial, (2) the error had a probable impact on the outcome, and finally, (3) the error is an exceptional case that warrants plain error review. *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024). The error must be fundamental, meaning that it is "something so basic, so prejudicial, [and] so lacking . . . that justice cannot have been done[;]" or is one that "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings[;]" or is one that can fairly be said to have

had a "probable impact" on the jury's findings of guilt. *Lawrence*, 365 N.C. at 516-17, 723 S.E.2d at 333. This Court must be convinced that the error "tilted the scales," and the jury probably would have otherwise reached a different verdict. *State v. Lilley*, 318 N.C. 390, 394, 348 S.E.2d 788, 791 (1986).

Defendant asserts that the testimony regarding the ballistics report violated his rights under the Confrontation Clause of the Sixth Amendment and Article I, § 23 of the North Carolina Constitution because the analyst who conducted the ballistics testing and produced the report was not available for cross-examination. However, we need not conduct a full plain error analysis as we conclude the testimony in question is not prohibited by the Confrontation Clause, thus the trial court did not err for this reason.

Detective Blackman's statements regarding the report are not the type of testimonial statements protected by the Confrontation Clause. The Confrontation Clause "bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant has had a prior opportunity' to cross-examine her." *Smith v. Arizona*, 602 U.S. 779, 783, 144 S.Ct. 1785, 1791 (2024). Only testimonial statements introducing hearsay are prohibited. *Id.* at 785, 144 S.Ct. at 1792. A hearsay statement is an "out-of-court statement[] offered 'to prove the truth of the matter asserted.'" *Id.* Testimonial statements are not barred by the Confrontation Clause when they are admitted for "purposes other than establishing the truth of the matter asserted." *State v. Ball*, 292 N.C. App. 151, 160,

897 S.E.2d 20, 28 (2024).

Here, while the ballistics report and its contents are out-of-court statements by the analyst, Detective Blackman did not offer the contents of the report for their truth. He answered that he had received the report and stated what was indicated by the report; however, his testimony was for the purpose of establishing the steps he took in his investigation, not for the purpose of proving what was in the report. *See Smith*, 602 U.S. at 783, 144 S.Ct. at 1791 (stating "an absent laboratory analyst's testimonial out-of-court statements," i.e. the report, cannot be introduced "to prove the results of the forensic testing" contained in the report). Further, the State asked no follow up questions regarding the contents of the ballistics report.

Because the testimony in question does not constitute testimonial hearsay, Defendant's rights under the Confrontation Clause were not violated. We conclude Defendant did not meet his burden in establishing the trial court erred, much less committed plain error, in admitting Detective Blackman's testimony.

## III. Conclusion

Considering the evidence in a light most favorable to the State and giving the State the benefit of all reasonable inferences, the trial court did not err in denying Defendant's motion to dismiss. The State presented evidence sufficient for the trial court to submit the charges to the jury.

The trial court did not commit plain error in allowing Detective Blackman's testimony regarding the ballistics report because the testimony was not hearsay.

Defendant's rights under the Confrontation Clause of the Sixth Amendment and Article I, § 23 of the North Carolina Constitution were not violated. Accordingly, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges ARROWOOD and FREEMAN concur.

Report per Rule 30(e).