STATE OF NORTH CAROLINA
v.
SABUR RASHID ALLAH

No. COA13-667

Filed 3 December 2013

**1. Burglary and Unlawful Breaking or Entering—intent—felonious restraint—evidence not sufficient**

The trial court erred by denying defendant's motion to dismiss a first-degree burglary charge where the indictment alleged the intent to commit felonious restraint inside an apartment, but the record provided no indication that defendant could have possibly intended to commit the offense of felonious restraint against the victim within the confines of the apartment structure. The facts in this case were indistinguishable from those at issue in *State v. Goldsmith*, 187 N.C. App. 162, in any meaningful way. Moreover, while the continuing offense doctrine might support a finding that defendant actually committed the offense of felonious restraint, it did not suffice to show that defendant intended to commit that offense inside the structure into which he broke and entered.

**2. Appeal and Error—preservation of issues—no objection at trial—challenge to condition of probation**

Defendant did not waive the right to seek appellate review of his challenge to a condition of his probation where he did not object at trial. According to well-established North Carolina law, N.C. R. App. P. 10(a)(1) does not apply to sentencing-related issues.

**STATE v. ALLAH**

[231 N.C. App. 88 (2013)]

**3. Probation and Parole—condition—supervised visits with daughter—no abuse of discretion**

The trial court did not abuse its discretion by imposing as a condition of probation that defendant's visits with his daughter be supervised. The trial court could reasonably conclude under the circumstances that requiring supervised visits would limit the chance that defendant would have inappropriate contact or disputes with Ms. Pickett and help protect defendant's daughter from any untoward event.

Appeal by defendant from judgments entered 28 January 2013 by Judge Susan E. Bray in Forsyth County Superior Court. Heard in the Court of Appeals 24 October 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Larissa S. Williamson, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for Defendant.*

ERVIN, Judge.

Defendant Sabur Rashid Allah appeals from judgments sentencing him to 51 to 71 months imprisonment based upon his conviction for first degree burglary and to a consecutive term of 13 to 16 months imprisonment, which the trial court suspended for 24 months on the condition that Defendant be placed on supervised probation and comply with certain terms and conditions, based upon his convictions for felonious restraint and communicating threats. On appeal, Defendant argues that the trial court erred by denying his motion to dismiss the first degree burglary charge, improperly instructing the jury with respect to the first degree burglary charge, and ordering, as a condition of probation, that Defendant's visitation with his child by the prosecuting witness be supervised. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the Defendant's first degree burglary conviction should be vacated, that the case should be remanded to the Forsyth County Superior Court for the entry of a new judgment sentencing Defendant based upon a conviction for misdemeanor breaking or entering, and that the trial court's probationary judgment should be affirmed.

**STATE v. ALLAH**

[231 N.C. App. 88 (2013)]

## I. Factual Background

### A. Substantive Facts

In November 2011, Defendant was dating Charon Pickett, with whom he shared an apartment on Melrose Street in Winston-Salem. On the evening of 12 November 2011, Defendant celebrated his birthday at his sister's apartment in Winston-Salem. At approximately midnight, Ms. Pickett's cousin, Erica James, dropped Ms. Pickett off at the apartment at which the birthday party was occurring. Defendant was already intoxicated by the time that Ms. Pickett arrived at the party.

Ms. Pickett and Defendant left the party together at around 12:30 or 1:00 a.m. and returned to their apartment. Upon arriving at the apartment, Defendant became angry because Ms. Pickett refused to have sex with him. In his anger, Defendant flipped over the mattress upon which Ms. Pickett was lying, left the apartment, and drove off in Ms. Pickett's car. At that point, Ms. Pickett telephoned Ms. James and requested that Ms. James pick her up given her fear of being at the apartment when Defendant returned. As a result, Ms. James picked Ms. Pickett up and took her to Ms. James' apartment.

About fifteen to twenty minutes after Ms. Pickett and Ms. James arrived at Ms. James' apartment, a person who identified himself as "Chris" knocked on the door. Upon recognizing the voice as that of Defendant, Ms. Pickett hid in a bedroom closet out of concern about what Defendant might do in the event that he entered the apartment. After Ms. James refused to admit him, Defendant kicked the door in, searched the apartment, and found Ms. Pickett hidden in the closet. At that point, Defendant grabbed Ms. Pickett by her hair and dragged her out of the apartment and into the parking lot in which he had left Ms. Pickett's car with the motor still running. After shoving Ms. Pickett into the car, Defendant drove off toward his sister's apartment.

At the time that the car in which Defendant and Ms. Pickett were traveling arrived at the parking lot outside Defendant's sister's apartment, Defendant told Ms. Pickett he was going to kill her and choked Ms. Pickett until she briefly lost consciousness. After driving to a nearby Krispy Kreme establishment, Defendant reiterated his threat to kill Ms. Pickett, making reference to a man who had recently killed his girlfriend before killing himself. In response, Ms. Pickett pleaded with Defendant, reminding him that they had children and stating that, if he killed her, Defendant would be incarcerated. After responding to Ms. Pickett's plea by stating, "[y]ou're right, you're not worth it," Defendant drove back to the apartment that he and Ms. Pickett shared.

**STATE v. ALLAH**

[231 N.C. App. 88 (2013)]

After Defendant and Ms. Pickett entered their apartment, Ms. James called Ms. Pickett for the purpose of telling her that a law enforcement officer wanted to speak with her. At that point, Defendant grabbed the phone from Ms. Pickett and disconnected the call. Over the course of the next 20 minutes, Defendant sent a series of text messages to Ms. James using Ms. Pickett's phone in an attempt to dissuade Ms. James from contacting the police in the hope that Ms. James would think that Ms. Pickett did not want such contact to be made. After Defendant returned the phone to Ms. Pickett, she received another call from Ms. James, who explained that the police officer wanted to see her for the purpose of making sure that she was safe and uninjured.

A few minutes after Ms. Pickett told Defendant that she was going to talk to the police, Defendant and Ms. Pickett left the apartment in Ms. Pickett's car. Shortly thereafter, Officer J.M. Payne of the Winston-Salem Police Department stopped the car. Although Defendant exited the car and attempted to flee, Officer Payne took him into custody by using a taser. At some point after Defendant was taken into custody, however, he and Ms. Pickett began living together again and had a child, who was three months old at the time of the trial.

### B. Procedural History

On 13 November 2011, magistrate's orders charging Defendant with first degree kidnaping, first degree burglary, assault on a female, communicating threats, and resisting a public officer were issued. On 30 July 2012, the Forsyth County grand jury returned bills of indictment charging Defendant with felonious restraint, first degree burglary, assault on a female, communicating threats, and resisting a public officer. The charges against Defendant came on for trial before the trial court and a jury at the 21 January 2013 criminal session of the Forsyth County Superior Court. At the conclusion of the State's evidence, the trial court granted Defendant's motion to dismiss the resisting a police officer charge. On 25 January 2013, the jury returned verdicts convicting Defendant of felonious restraint, first degree burglary, and communicating threats and acquitting Defendant of assault on a female. On 28 January 2013, the trial court entered a judgment sentencing Defendant to 51 to 71 months based upon his conviction for first degree burglary; consolidated Defendants' convictions for felonious restraint and communicating threats for judgment; and entered a judgment sentencing Defendant to a consecutive term of 13 to 16 months imprisonment, with this sentence being suspended and with Defendant being placed on supervised probation for a period of 24 months subject to certain terms

and conditions. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Substantive Legal Analysis

### A. Sufficiency of the Evidence of First Degree Burglary

[1] In his first challenge to the trial court's judgments, Defendant contends that the trial court erred by denying his motion to dismiss the first degree burglary charge for insufficiency of the evidence. More specifically, Defendant contends that the trial court should have dismissed the first degree burglary charge on the grounds that the State failed to adduce sufficient evidence to establish that he broke and entered Ms. James' apartment with the intent to commit felonious restraint inside that structure. Defendant's contention has merit.

In ruling on a motion to dismiss for insufficiency of the evidence, the trial court must determine whether the record contains substantial evidence tending to establish the existence of each essential element of the offense with which Defendant has been charged, with the evidence to be considered in the light most favorable to the State and with the State being given the benefit of any inference that may be reasonably drawn from the evidence. *State v. Davis*, 74 N.C. App. 208, 212, 328 S.E.2d 11, 14, *disc. review denied*, 313 N.C. 510, 329 S.E.2d 406 (1985). On the other hand, in the event that the evidence does nothing more than raise a suspicion of guilt, a motion to dismiss should be granted. *State v. Daniels*, 300 N.C. 105, 114, 265 S.E.2d 217, 222 (1980). This Court reviews a trial court's decision to deny a dismissal motion using a *de novo* standard of review. *See State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981).

The offense of first degree burglary consists of (1) a breaking (2) and entering, (3) in the nighttime, (4) into the dwelling house or sleeping apartment of another, (5) which is actually occupied at the time of the offense, (6) with the intent to commit a felony therein. *State v. Barnett*, 113 N.C. App. 69, 74, 437 S.E.2d 711, 714 (1993). "Intent to commit a felony is an essential element of burglary." *State v. Faircloth*, 297 N.C. 388, 395, 255 S.E.2d 366, 370 (1979), *superseded on other grounds by statute*, *State v. Silas*, 360 N.C. 377, 381, 627 S.E.2d 604, 607 (2006). "Felonious intent usually cannot be proven by direct evidence, but rather must be inferred from the defendant's 'acts, conduct, and inferences fairly deducible from all the circumstances.' " *State v. Goldsmith*, 187 N.C. App. 162, 165, 652 S.E.2d 336, 339-40 (2007) (quoting *State v. Wright*, 127 N.C. App. 592, 597, 492 S.E.2d 365, 368 (1997), *disc. rev. denied*, 347 N.C. 584, 502 S.E.2d 616 (1998)). For that reason, the intent to commit a felony within the structure which the defendant has entered necessary

for a first degree burglary conviction "may be inferred from the circumstances surrounding the occurrence," *State v. Thorpe*, 274 N.C. 457, 464, 164 S.E.2d 171, 176 (1968), with "evidence of what a defendant does after he breaks and enters a house [constituting] evidence of his intent at the time of the breaking and entering." *State v. Gray*, 322 N.C. 457, 461, 368 S.E.2d 627, 629 (1988). " '[W]hen the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged.' " *Faircloth*, 297 N.C. at 395, 255 S.E.2d at 371. *See also Silas*, 360 N.C. at 383, 627 S.E.2d at 608 (quoting *State v. Wilkinson*, 344 N.C. 198, 222, 474 S.E.2d 375, 388 (1996)).

The indictment charging Defendant with first degree burglary alleged that he broke and entered Ms. James' apartment "with the intent to commit a felony therein, felonious restraint." For that reason, the State was required, in order to obtain a first degree burglary conviction, to prove that Defendant intended to commit the offense of felonious restraint at the time that he came into Ms. James' apartment.

> A person commits the offense of felonious restraint if he unlawfully restrains another person without that person's consent, or the consent of the person's parent or legal custodian if the person is less than 16 years old, and moves the person from the place of the initial restraint by transporting him in a motor vehicle or other conveyance.

N.C. Gen. Stat. § 14-43.3. Although the offense of felonious restraint is a lesser included offense of kidnaping, *State v. Wilson*, 128 N.C. App. 688, 693, 497 S.E.2d 416, 420, *disc. review improvidently granted*, 349 N.C. 289, 507 S.E.2d 38 (1998), it "contains an element not contained in the crime of kidnaping – transportation by motor vehicle or other conveyance." *Id.* As a result of the fact that guilt of felonious restraint requires proof that the defendant transported the victim by motor vehicle or other conveyance and the fact that the record contains no evidence that Defendant intended to transport Ms. Pickett by vehicle when he entered Ms. James' apartment, Defendant contends that the record did not contain sufficient evidence to permit a rational jury to conclude that he intended to feloniously restrain Ms. Pickett at the time that he broke into and entered Ms. James' apartment.

The leading case addressing the extent to which the State is required to establish that the defendant intended to commit the offense inside the structure into which the defendant broke and entered is *State v. Goldsmith*, 187 N.C. App. 162, 652 S.E.2d 336 (2007), in which the defendant and a friend went to the victim's house at around 3:00 a.m.

with the intent to rob the victim, knocked on the door, pulled the victim out of the house after he answered the door, and demanded that the victim give him money or drugs as they struggled in the yard before fleeing when the victim's wife appeared with a shotgun. *Goldsmith*, 187 N.C. App. at 163, 652 S.E.2d at 338. On appeal, this Court held that the defendant's motion to dismiss the first degree burglary charge should have been allowed given the State's failure to prove that the defendant intended to commit a robbery inside the victim's house. After noting that, immediately after the victim opened the door, the defendant had pulled him out of the house, we stated that the undisputed "evidence [tended to show the existence of] an intent contrary to committing the robbery inside the dwelling, and instead support[ed] an inference that defendant intended to commit the robbery outside of the home." *Goldsmith*, 187 N.C. App. at 166, 652 S.E.2d at 340. As a result, this Court overturned the defendant's first degree burglary conviction and remanded the case in question to the trial court for the entry of a judgment sentencing him based upon a conviction for misdemeanor breaking or entering.

A thorough review of the record persuades us that the facts before us in this case are indistinguishable from those at issue in *Goldsmith* in any meaningful way. The undisputed evidence contained in the present record indicates that Defendant left the motor in the car which he was driving running during his entry into Ms. James' apartment, which was up two flights of stairs, and that, after locating Ms. Pickett in Ms. James' apartment, Defendant grabbed Ms. Pickett, pulled her from Ms. James' apartment into the waiting motor vehicle, and drove off. In view of the fact that the only vehicle in which Defendant could have intended to transport Ms. Pickett was outside in a parking lot, the record provides no indication Defendant could have possibly intended to commit the offense of felonious restraint against Ms. Pickett within the confines of Ms. James' apartment structure as required by *Goldsmith*. As a result, the trial court erred by denying Defendant's motion to dismiss the first degree burglary charge that had been lodged against him.[1]

---

1. Although Defendant suggests that an individual could never be properly charged with committing first degree burglary based on the intent to commit felonious restraint on the theory that the offense of felonious restraint could never be committed inside a structure, we are unwilling to accept that argument given our ability to hypothesize situations in which such an intent could plausibly be inferred. As a result, we do not wish to be understood as holding that a first degree burglary conviction could never be upheld in a case in which the State alleged that the defendant intended to commit the offense of felonious restraint. Instead, we simply hold that the record before us in this case would not permit a reasonable juror to infer that Defendant intended to commit the offense of felonious restraint at the time that he broke into and entered Ms. James' apartment.

STATE v. ALLAH

[231 N.C. App. 88 (2013)]

In seeking to persuade us to reach a different result, the State argues, in reliance on the fact that some crimes are continuing offenses, that the intent to commit a felony within Ms. James' apartment necessary for guilt of first degree burglary exists so long as the defendant committed any element of the offense in question within Ms. James' apartment. In support of this contention, the State cites *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 555, 346 S.E.2d 488, 495 (1986), in which the Supreme Court held that a series of acts constituting one continuous transaction established that the defendant had committed a single kidnaping. *Hall*, 305 N.C. at 82-83, 286 S.E.2d at 555-56. Based upon that decision, the State argues that the felonious restraint of Ms. Pickett was a continuing offense which began when he initially restrained Ms. Pickett inside Ms. James' apartment and that the commission of an act constituting an element of felonious restraint indicates that he broke into and entered Ms. James' apartment with the intent to feloniously restrain Ms. Pickett.

The fundamental problem with the State's argument is that it rests upon a misunderstanding of the relationship between a continuing offense and the intent necessary to support a first degree burglary conviction. According to well-established North Carolina law, a continuing offense is a "breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences." *State v. Johnson*, 212 N.C. 566, 570, 194 S.E. 319, 322 (1937). In other words, a continuing offense has been committed when the defendant, over some period of time and, possibly, in a number of different places, has committed all of the elements necessary to establish criminal liability. *See Hall*, 305 N.C. at 82-83, 286 S.E.2d at 556 (stating that "the fact that all essential elements of a crime have arisen does not mean the crime is no longer being committed" and that the fact that "the crime was 'complete' does not mean it was completed"). In order to establish the defendant's guilt of first degree burglary, however, the State is required to establish that the defendant intended to commit a felony within the structure into which he broke and entered. As a result, while the continuing offense doctrine might support a finding that Defendant actually committed the offense of felonious restraint, it does not suffice to show that Defendant intended to commit that offense inside the structure into which he broke and entered. Moreover, the State has cited nothing in support of its contention that the completion of a single element required for guilt of a particular offense inside the structure into which the defendant broke and entered is sufficient to establish that the defendant intended to commit the offense in question "within" the structure as required by our

decision in *Goldsmith,* and we know of nothing in our burglary-related jurisprudence which would support such an assertion. In fact, given that the victim in *Goldsmith* was forced from the door of his residence into the yard, one could argue that the assault inherent in the commission of a robbery with a dangerous weapon began in the victim's residence, making the facts at issue there virtually indistinguishable from those at issue here. Thus, given that the "continuing offense" doctrine has no bearing on the extent, if any, to which the State adduced sufficient evidence to permit the jury to find that Defendant broke into and entered Ms. James' apartment with the intent to feloniously restrain Ms. Pickett within that structure and given the absence of any authority indicating that the commission of a single element inside Ms. James' apartment sufficed to permit a jury determination that Defendant intended to commit felonious restraint within that structure, we conclude that the trial court erred by denying Defendant's motion to dismiss the first degree burglary charge that had been lodged against him.

Although the record does not contain sufficient evidence to support Defendant's first degree burglary conviction, it does contain sufficient evidence to support convicting Defendant of misdemeanor breaking or entering, which involves the unlawful breaking or entry into any building. N.C. Gen. Stat. § 14-54(b). "[B]y finding the defendant guilty of burglary, the jury 'necessarily found facts which would support a conviction of misdemeanor breaking and entering,' " so that, "where, as here, the evidence of intent to commit a felony is insufficient," *State v. Freeman,* 307 N.C. 445, 451, 298 S.E.2d 376, 380 (1983) (quoting *State v. Dawkins,* 305 N.C. 289, 291, 287 S.E.2d 885, 887 (1982)), the jury's verdict is tantamount to a decision that the defendant should be found guilty of misdemeanor breaking or entering. As a result, we hold that Defendant's conviction for first degree burglary should be vacated and that this case should be remanded to the Forsyth County Superior Court for the entry of a new judgment finding that Defendant had been convicted of misdemeanor breaking or entering and imposing sentence upon him for committing that lesser included offense.[2]

### B. Visitation Restrictions

**[2]** Secondly, Defendant argues that the trial court erred by ordering, as a condition of probation, that Defendant's visits with his daughter be

---

2. As a result of our decision with respect to this sufficiency of the evidence issue, we need not address Defendant's related argument that the trial court committed plain error in connection with its instructions to the jury with respect to the issue of Defendant's guilt of first degree burglary.

supervised. In essence, Defendant contends that the trial court lacked the authority to impose the challenged condition of probation. We do not find Defendant's argument persuasive.

Although Defendant did not object to the challenged condition of probation at trial, we do not believe, contrary to the implication of the argument advanced in the State's brief, that Defendant has waived the right to seek and obtain appellate review of his challenge to the relevant condition of probation. Admittedly, N.C.R. App. P. 10(a)(1) provides that, as a general proposition, a party must have raised an issue before the trial court before presenting it to this Court for appellate review. However, according to well-established North Carolina law, N.C.R. App. P. 10(a)(1) does not apply to sentencing-related issues. *See State v. Curmon*, 171 N.C. App. 697, 703, 615 S.E.2d 417, 422 (2005). The extent to which a trial judge erred by imposing a particular condition of probation is clearly a sentencing-related issue. As if the ordinary principles applicable to the lack of any necessity for objecting to sentencing-related issues at trial were not enough to establish that Defendant's challenge to the trial court's judgment is properly before this Court, N.C. Gen. Stat. § 15A-1342(g) provides that any failure on the part of the defendant "to object to a condition of probation [at the time it is] imposed does not constitute a waiver of the right to object at a later time to the condition." Thus, since a defendant "cannot relitigate the legality of a condition of probation unless he raises the issue no later than the hearing at which his probation is revoked," *State v. Cooper*, 304 N.C. 180, 183, 282 S.E.2d 436, 439 (1981), and since Defendant has challenged the validity of the condition of probation at issue here prior to any attempt to revoke his probation, Defendant is not, contrary to the State's suggestion, barred from challenging the validity of this condition of probation on appeal from the trial court's judgment despite his failure to challenge the validity of this condition before the trial court for this reason as well. We will now address Defendant's challenge to the condition of probation in question on the merits.

[3] The extent to which a trial judge is entitled to impose a particular condition of probation depends upon the proper application of the relevant statutory provisions. N.C. Gen. Stat. § 15A-1342(c). A number of conditions of probation are automatically included in each probationary judgment unless the trial court specifically elects to exempt the defendant from the necessity for compliance with one or more of those conditions. N.C. Gen. Stat. § 15A-1343(b). In addition, N.C. Gen. Stat. § 15A-1343(b1) provides that a trial judge is entitled to impose one or more of several specified special conditions of probation in the exercise

of its sound discretion. Finally, N.C. Gen. Stat. § 15A-1343(b1)(10) authorizes a trial judge to require the defendant to "[s]atisfy any other conditions determined by the court to be reasonably related to his reha- bilitation." The extent to which a particular condition of probation is authorized by N.C. Gen. Stat. § 15A-1343(b1)(10) hinges upon whether the challenged condition bears a reasonable relationship to the offenses committed by the defendant, whether the condition tends to reduce the defendant's exposure to crime, and whether the condition assists in the defendant's rehabilitation. *Cooper*, 304 N.C. at 183, 282 S.E.2d at 438. As a result, although the trial courts have the discretion to devise and impose special conditions of probation other than those specified in N.C. Gen. Stat. § 15A-1343(b1), N.C. Gen. Stat. § 15A-1343(b1)(10) "operates as a check on the discretion [available to] trial judges" during that pro- cess. *State v. Lambert*, 146 N.C. App. 360, 367, 553 S.E.2d 71, 77 (2001), *disc. review denied*, 355 N.C. 289, 561 S.E.2d 271 (2002). A challenge to a trial court's decision to impose a condition of probation is reviewed on appeal using an abuse of discretion standard of review, *See State v. Harrington*, 78 N.C. App. 39, 48, 336 S.E.2d 852, 857 (1985), with such an abuse of discretion having occurred when the trial court's ruling is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Although Defendant argues that the trial court abused its discre- tion by requiring that his visits with his daughter be supervised on the grounds that he has never injured or posed a threat to his daughter, thereby rendering the condition in question devoid of any reasonable relation to the rehabilitative process, we do not find this argument per- suasive. Simply put, the evidence in the record clearly shows that, in a fit of anger, Defendant choked and threatened to kill the mother of his child. In light of that set of circumstances, the trial court could reason- ably conclude that requiring that Defendant's visits with his daughter be supervised would limit the chance that Defendant would have inappro- priate contact or disputes with Ms. Pickett and help protect Defendant's daughter from any untoward event which might occur should he become ferociously angry at Ms. Pickett again. As a result, we conclude that the trial court did not abuse its discretion by requiring that Defendant's vis- its with his daughter be supervised during the time in which he was sub- ject to probationary supervision.

In addition, Defendant argues that the trial court erred by impos- ing the challenged condition on the grounds that (1) the district court has exclusive jurisdiction over child custody and visitation disputes

pursuant to N.C. Gen. Stat. § 7A-244; (2) issues relating to custody or visitation are only subject to resolution in civil litigation conducted pursuant to the relevant statutory provisions; (3) a parent must receive notice of a hearing concerning support or visitation-related issues before an order affecting custody and visitation rights can be entered, *Clayton v. Clayton*, 54 N.C. App. 612, 614, 284 S.E.2d 125, 127 (1981); and (4) a custody-related order must include findings of fact which support the trial court's "best interests" determination. N.C. Gen. Stat. § 50-13.2(a). The authorities upon which Defendant relies in support of this argument are, however, all civil in nature and have no bearing on a criminal trial court's authority to adopt otherwise lawful conditions of probation. As a result, none of Defendant's challenges to the limitation upon his ability to visit with his daughter imposed in the trial court's probationary judgment have merit.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that, although the trial court erroneously denied Defendant's motion to dismiss the first degree burglary charge, it did not err by requiring that Defendant's visitation with his daughter be conducted on a supervised basis as a condition of probation. As a result, the trial court's judgment based upon Defendant's first degree burglary conviction should be, and hereby is, vacated, and the case in which Defendant was convicted of first degree burglary should be, and hereby is, remanded to the Forsyth County Superior Court for the entry of a new judgment sentencing Defendant for misdemeanor breaking or entering. On the other hand, the trial court's judgment based upon Defendant's convictions for felonious restraint and communicating threats should be, and hereby is, allowed to remain undisturbed.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judges GEER and STEPHENS concur.