IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-313

No. COA20-563

Filed 6 July 2021

Cabarrus County, No. 17 CRS 55821

STATE OF NORTH CAROLINA

v.

JAMES GREGORY MEDLIN

Appeal by defendant from judgment entered 17 September 2019 by Judge Anna M. Wagoner in Cabarrus County Superior Court. Heard in the Court of Appeals 12 May 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General William F. Maddrey, for the State.*

*Sandra Payne Hagood for defendant-appellant.*

TYSON, Judge.

James Medlin ("Defendant") appeals the judgment entered upon his conviction for felony obtaining property by false pretenses on 12 February 2018. We find no error.

## I. Background

Defendant and his wife, Mary, lived in a house owned by Mary's mother, Ellen Mitchner ("Mitchner"). Defendant and Mary were both addicted to illegal drugs.

- 1 -

Defendant's and Mary's three daughters have been living with Mitchner since October 2017. Mitchner acquired and maintained legal custody of the three children in May 2019.

¶ 3     In October 2017, Mitchner asked Defendant and Mary to store a box of Mitchner's valuables inside a safe located inside the home she owned where they lived. The box contained gold coins and inherited jewelry.

¶ 4     Mitchner testified she never indicated to Defendant or her daughter the coins or jewelry were a gift. Mitchner asked for the box to be returned several times. Defendant and Mary made excuses for not returning the box.

¶ 5     Mitchner eventually retrieved the box and discovered all the gold coins and most of the jewelry were missing. Some of the rings had been replaced with crystal and cubic zirconia rings. Mitchner reported the coins and jewelry stolen and gave the police a description of the items. Mitchner also learned Defendant had pawned items at a local pawn shop.

¶ 6     Police found a ring at the City Pawn Shop that matched the description given by Mitchner. Mitchner identified the ring as one of her rings from the box she had left with Defendant. The owner of City Pawn testified Defendant had pawned the ring.

¶ 7     Defendant and Mary testified the ring found at City Pawn, which Mitchner claims was hers, is Mary's engagement ring. Defendant testified when he returned

to City Pawn to redeem Mary's engagement ring and "to pay it off," the police had taken it.

¶ 8     The jury returned a verdict of guilty for feloniously obtaining property by false pretenses.  Prior to sentencing, the following colloquy occurred:

> [DISTRICT ATTORNEY]: I would just ask that this defendant have no contact with Ms. Mitchner . . . but if this family, either one of them, have any harassment with this victim over this verdict they will be charged, any kind of harassment.
>
>  . . . .
>
> [DEFENDANT]: We do get along fine. When it comes to the children, we get along just perfectly.
>
>  . . . .
>
> THE COURT: Let me ask you this; [Mitchner], right now, do they visit with these children any?
>
> MITCHNER: Yes, ma'am.
>
> THE COURT: And that's ok with you.
>
> MITCHNER: Yes, ma'am.  The custody order is for one hour or more every two weeks.
>
> THE COURT: And where do y'all do that.
>
> MITCHNER: They have been coming over to the house.
>
> THE COURT: And that's okay with you.
>
> MITCHNER: I don't want them at the house.  I prefer to meet them at a restaurant or park or some place like that.

[DISTRICT ATTORNEY]: I think that's probably a good idea.

THE COURT: I'm just worried about having to work out where they're going to meet.

 . . . .

[DISTRICT ATTORNEY]: Your Honor, that's how it's written in the custody order. They're allowed to do that. If Ms. Mitchner wants to set that up at some supervised location, I think that that's what they need to do.

 . . . .

THE COURT: This sentence is suspended. He is placed on supervised probation for 30 months under the following terms and conditions. . . . He is not to threaten, harass or molest Ms. Mitchner during the suspension of this sentence. . . . He is to abide by the custody and visitation agreement currently in effect.

 . . . .

[DISTRICT ATTORNEY]: I want no contact then because if he's going to try to talk to her - - he's already tried to do it in the past - - talk to her about this case, there doesn't need to be any communication I don't think if he's going to enter notice of appeal.

[DEFENDANT]: That's not going to work.

THE COURT: Well, sooner or later, something's got to work because the way y'all are doing right now, nothing's working. I'm just going to order that you have no contact with Ms. Mitchner. Hopefully you can find a third person who y'all can get together and talk about visitation with your children.

¶ 9 Defendant was sentenced to a term of five to fifteen months, suspended, and placed on supervised probation for thirty months. The court imposed a special condition of probation requiring Defendant, to "not assault, threaten, harass, be found in or on the premises or workplace of, or have any contact with" Mitchner.

¶ 10 As noted above, the trial court stated, "contact includes any defendant-initiated contact, direct or indirect, by any means, including, but not limited to, telephone personal contact, e-mail, pager, gift giving, telefacsimile machine or through any other person." Form AOC-CR-603D provides a space after this provision for exceptions. That space is left blank. Under "Other" on the form, Defendant is ordered to comply with the custody order and not to harass Mitchner. Defendant entered oral notice of appeal in open court.

## II.    Jurisdiction

¶ 11 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2019).

## III.    Issue

¶ 12 Defendant's sole argument on appeal asserts the trial court abused its discretion by ordering him not to have contact with Mitchner as a special condition of probation when it is unclear how his child custody order would be affected. Defendant has waived all other remaining challenges.

## IV.    Standard of Review

A trial court's decision to impose a condition of probation is reviewed on appeal for abuse of discretion. *State v. Harrington*, 78 N.C. App. 39, 48, 336 S.E.2d 852, 857 (1985). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not be the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). "[A] probationer does not have to object to a condition of probation at the time probation is imposed, but may object at a later time . . . [if] he raises the issue [before] the hearing at which his probation is revoked." *State v. Williams*, 230 N.C. App. 590, 596, 754 S.E.2d 826, 830 (2013) (citation and internal quotation marks omitted).

## V.    Analysis

Defendant does not challenge his conviction nor any of the remaining terms and conditions of his probationary sentence.  Defendant argues the trial court's condition of probation prohibiting contact with his mother-in-law is abuse of discretion and does not satisfy the requirements of N.C. Gen. Stat. § 15A-1343(b1), which provides:

> Special Conditions.--In addition to the regular conditions of probation specified in subsection (b), the court may, as a condition of probation, require that during the probation the defendant comply with one or more of the following special conditions: . . . (10) Satisfy any other conditions determined by the court to be *reasonably related to his rehabilitation.*

N.C. Gen. Stat. § 15A-1343(b1)(10)(2019) (emphasis supplied).  If the trial court

imposes probation, it must determine which conditions are to apply to Defendant.  N.C. Gen. Stat. § 15A-1342(c) (2019).

¶ 15        The trial court ordered Defendant not to have "contact with ELLEN MITCHNER. 'Contact' includes any defendant-initiated contact, direct or indirect, by any means." Mitchner had told the trial court, "I don't want them at the house.  I prefer to meet them at a restaurant or park or some place like that."  Defendant had stated, "We do get along fine.  When it comes to the children, we get along just perfectly," purportedly emphasizing the parties had no conflicts when the children were involved.

¶ 16        Defendant does not challenge the special condition of probation to the extent that it forbids him from harassing Mitchner.  He argues he is not allowed to contact Mitchner at all, and it is unclear how Defendant is supposed to exercise his child custody visitation, while not violating his probation special condition.

> [W]hen visitation rights are awarded, it is the exercise of a judicial function. We do not think that the exercise of this judicial function may be properly delegated by the court to the custodian of the child. Usually those who are involved in a controversy over the custody of a child have been unable to come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.

*In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971).

¶ 17        Here, the frequency and length of Defendant's visitation with his children is

established in the prior child custody order. That order is not before us. The frequency and length of Defendant's visitation with his children remain undisturbed. Defendant and Mary have consistently visited with their children without issues from Mitchner. The trial court stated, "I'm just worried about having to work out where they're going to meet." "I'm just going to order that you have no contact with Ms. Mitchner. Hopefully you can find a third person who y'all can get together and talk about visitation with your children."

¶ 18        The State correctly argues, nothing prevents Mitchner from calling Defendant or Mary and setting up a time and place for Defendant and Mary to meet with their children. The State also notes, nothing in the order prevents Mary from speaking to her own mother about arranging a time and place to see her own children.

¶ 19        Mitchner is also the legal and physical custodian of Defendant's and Mary's three daughters. She stated in open court she does not want Defendant at or in her home, which is her prerogative. She was providing Defendant and Mary, her daughter, a safe home and was caring for their children, while he stole, sold, and pawned her property to fuel his illegal drug use.

¶ 20        The trial court's special condition of probation, ordering no contact between the victim of the crime and Defendant, is reasonably related to protection of the victim, Defendant's rehabilitation, and his compliance with his probation. N.C. Gen. Stat. § 15A-1343(b1)(10). Under the facts before us, Defendant has failed to show any abuse

of discretion in the trial court's imposing the special condition. Defendant failed to raise any constitutional challenge before the trial court and has waived any unpreserved challenges on appeal. N.C. R. App. P. 10.

## VI.    Conclusion

¶ 21        The trial court acted within its discretion to order and enter as a special condition of probation for Defendant to not have any contact with Mitchner, the victim, directly or indirectly, and did not alter his visitation rights or frequency. The special condition is related to the protection of the victim and to Defendant's crime, conviction, and rehabilitation. Defendant does not challenge the condition for him not to harass Mitchner.

¶ 22        Defendant has failed to show any abuse of discretion in the special condition of probation to prohibit Defendant from having any contact with his mother-in-law. Defendant received a fair trial, free from prejudicial errors he preserved or argued. We find no error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judge HAMPSON concurs

Judge WOOD dissents by separate opinion.

WOOD, Judge, dissenting.

¶ 23 I respectfully dissent from the majority opinion finding the trial court did not abuse its discretion in the sentence it imposed on Defendant. On appeal, Defendant contends the trial court abused its discretion by ordering as a condition of probation that Defendant have no contact, direct or indirect, with his mother-in-law, Mitchner, the legal custodian of his three daughters, although he has child custody visitation rights under the custody order. This condition of probation imposed by the trial court does not tend to reduce his exposure to crime or aid in his rehabilitation, nor does it bear a reasonable relationship to Defendant's conviction for obtaining property by false pretenses.

¶ 24 The sentencing judge "may impose conditions of probation reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so." N.C. Gen. Stat. § 15A-1343(a) (2020). "In addition to the regular conditions of probation[,] . . . the court may, as a condition of probation, require that during the probation the defendant comply with one or more . . . special conditions[.]" N.C. Gen. Stat. § 15A-1343(b1). In *State v. Harrington*, this Court held that a sentencing judge enjoys "substantial discretion" to devise and impose special conditions of probation, but that these conditions must still be "reasonably related to [defendant's] rehabilitation" under Section 15A-1343(b1)(10). 78 N.C. App. 39, 48, 336 S.E.2d 852, 857 (1985). As this Court has observed,

> [t]he extent to which a particular condition of probation is authorized by [Section] 15A-1343(b1)(10) hinges upon whether the challenged condition bears *a reasonable relationship to the offenses committed by the defendant, whether the condition tends to reduce the defendant's exposure to crime, and whether the condition assists in the defendant's rehabilitation.*

*State v. Allah*, 231 N.C. App. 88, 98, 750 S.E.2d 903, 911 (2013) (emphasis added).

¶ 25    Forbidding Defendant to have contact with Mitchner directly or even through a third party does not tend to reduce his exposure to crime or aid in his rehabilitation, nor does it bear a reasonable relationship to Defendant's crime, under a N.C. Gen. Stat. § 15A-1343 analysis. It does, however, prevent him from having contact with the custodian of his children and arranging visitation with them as afforded by the custody order. It substantially impairs, if not outright thwarts, his ability to arrange visitation with his children as was determined to be in the children's best interests under the custody order. The custody order does not set forth specific days and times for visitation, but does allow for bi-weekly visitation. The trial court's initial concern about how visitation would be arranged was valid; notwithstanding, the trial court subsequently ordered that Defendant have no contact with Mitchner at the request of the district attorney. The trial court stated, "Hopefully you can find a third person who y'all can get together and talk about visitation with your children." The trial court recognized the need for Defendant to have some type of contact with the custodian of his children so that visitation could be arranged. The State's argument

that "nothing prevents Mitchner from calling Defendant or Mary and setting up a time and place for Defendant and Mary to meet with their children" is unpersuasive. This imposes a new duty on the custodian to arrange the date, time, and location of visitation between Defendant and his children, and it prohibits Defendant from contacting the custodian if visitation is not arranged by her or if other arrangements must be made. By the terms of the order, it would be a violation of the special condition of probation for Defendant to ask a third party to call Mitchner to arrange visitation. The date, time, and location for Defendant's court ordered visitation with his children is thereby left solely to the discretion of the custodian. "[T]rial courts have the discretion to devise and impose special conditions of probation other than those specified in N.C. Gen. Stat. § 15A-1343(b1)"; however, "N.C. Gen. Stat. § 15A-1343(b1)(10) 'operates as a check on the discretion [available to] trial judges' during that process." *Id*. at 98, 750 S.E.2d at 911 (quoting *State v. Lambert*, 146 N.C. App. 360, 367, 553 S.E.2d 71, 77 (2001)). Although the decision of a sentencing judge to impose a special condition of probation is reviewed for an abuse of discretion, *id*., "statutory errors regarding sentencing issues . . . are questions of law, and as such, are reviewed *de novo*." *State v. Allen*, 249 N.C. App. 376, 379, 790 S.E.2d 588, 591 (2016) (internal quotation marks and citation omitted). Whether the reasonable relationship requirement under Section 15A-1343(b1)(10) is met depends on "whether the . . . condition bears a reasonable relationship to the offense[] committed . . . [or]

assists in the defendant's rehabilitation." *Allah*, 231 N.C. App. at 98, 750 S.E.2d at 911.

On September 17, 2019, a Cabarrus County jury convicted Defendant of obtaining property by false pretenses. Pursuant to N.C. Gen. Stat. § 14-100, our Supreme Court has defined the offense of false pretenses as "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980); N.C. Gen. Stat. § 14-100 (2020).

The condition imposed by the sentencing judge requiring Defendant to refrain from having any contact with Mitchner, directly or indirectly, is not reasonably related to Defendant's conviction for obtaining property by false pretenses. In the commission of his crime, Defendant defrauded the owner of the City Pawn Shop to whom he sold the ring and from whom he took payment. Consequently, the condition of probation imposed on Defendant forbidding him from having *any* contact with Mitchner, who was not the victim of Defendant's offense, is overly restrictive and does not bear a reasonable relationship to Defendant's offense, as required by Section 15A-1343(b1)(10). Accordingly, this condition of Defendant's probation should be vacated. I otherwise find no error in the sentence imposed by the trial court.