IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-308

No. COA20-644

Filed 6 July 2021

Burke County, No. 18 CRS 341

STATE OF NORTH CAROLINA

v.

JOSHUA ARRON GIBSON, Defendant.

Appeal by Defendant from judgment entered on 18 February 2020 by Judge Steven Warren in Burke County Superior Court. Heard in the Court of Appeals 28 April 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth B. Jenkins, for the State.*
>
> *Gilda C. Rodriguez for Defendant-Appellant.*

JACKSON, Judge.

¶ 1     Joshua Gibson ("Defendant") argues that the trial court erred when it (1) denied Defendant's motion to dismiss and (2) ordered payment of attorney's fees without affording Defendant an opportunity to be heard. We disagree and find no error in the proceedings below.

## I.     Facts and Procedural Background

¶ 2     On 3 May 2017, Kress Berry ("Mr. Berry"), a financial services representative,

operated the drive through lanes of a State Employees' Credit Union branch ("SECU"). During Mr. Berry's shift, a car pulled into the drive-through lane closest to him—placing the car and Mr. Berry approximately within 10 to 12 feet of each other. The individual sitting on the rear passenger side rolled his window down and submitted a check, driver's license, and social security card through the SECU tube system.

¶ 3        Upon receiving the check and identification documents, Mr. Berry confirmed that the driver's license, belonging to Defendant, matched the individual who was in the car. Mr. Berry, however, became suspicious of the check which he believed "didn't feel quite right." Mr. Berry also noticed that the writing on different parts of the check did not match, prompting Mr. Berry to contact Patricia Austin ("Mrs. Austin"), the person who had allegedly written the check. Mrs. Austin informed Mr. Berry that she did not write a check to Defendant and did not, in fact, know Defendant. Mrs. Austin did, however, write the check to the utility company for the Town of Long View and deposited it in her mailbox. Before the mailman could retrieve the utility payment, a vehicle drove up to Mrs. Austin's mailbox and removed the check.

¶ 4        After speaking with Mrs. Austin, Mr. Berry raised his concerns to his supervisor. At that time, the car Defendant was in drove away. Following the incident, SECU employees contacted the sheriff's department and provided officers with the original check, Defendant's driver's license, and his social security card that

had been deposited through the SECU tube system.

¶ 5        On 16 April 2018, a grand jury indicted Defendant for uttering a forged instrument. The case was later tried on 18 February 2020, before the Honorable Judge Steven Warren in Burke County Superior Court. During the trial, Detective Burton Wilbur ("Detective Wilbur") of the Burke County Sheriff's Office testified regarding the chain of custody of Defendant's driver's license and social security card, and the check presented to Mr. Berry. Mrs. Austin's husband also testified, confirming that he did not write a check to Defendant.

¶ 6        At the close of the State's evidence, Defendant moved to dismiss the charge of uttering a forged instrument for the State's failure to present sufficient evidence that Defendant was the perpetrator of the alleged offense. The court denied Defendant's motion. At the close of all the evidence, Defendant renewed his motion; the court denied that motion as well.

¶ 7        The jury returned a guilty verdict, and on 18 February 2020 Judge Warren entered a judgment sentencing Defendant to a term of five to 15 months, suspending the sentence, and placing Defendant on supervised probation for 18 months.

¶ 8        On 20 February 2020, Defendant filed a written notice of appeal.

## II.        Analysis

¶ 9        Defendant contends that the trial court erred in (1) denying Defendant's motion to dismiss for failure to present sufficient evidence that Defendant was the

perpetrator and (2) ordering attorney's fees without affording Defendant the opportunity to be heard. We address each issue in turn.

**A. Motion to Dismiss**

¶ 10    A defendant's motion to dismiss should be denied if "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant[ ] being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). We review a trial court's denial of a motion to dismiss de novo. *State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010).

¶ 11    "The essential elements of the crime of uttering a forged check are (1) the offer of a forged check to another, (2) with knowledge that the check is false, and (3) with the intent to defraud or injure another." *State v. Hill*, 31 N.C. App. 248, 249, 229 S.E.2d 810 (1976). Here, Defendant does not challenge whether the offense was committed. Instead, Defendant challenges the identity requirement necessary to overcome a motion to dismiss—arguing that the trial court erred in denying Defendant's motion to dismiss because the State failed to present sufficient evidence that Defendant was the perpetrator.

¶ 12        "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Scott*, 356 N.C. at 596, 573 S.E.2d at 869 (citation omitted). "Moreover, circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (internal marks and citations omitted). Indeed, "[t]he trial court[,] in considering such motions[,] is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). To that end, "contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *Id.*

¶ 13        Defendant was charged with uttering a forged instrument. During trial, the State offered the following as evidence that Defendant committed the offense: (1) Defendant's driver's license and social security card, which was furnished to Mr. Berry at the SECU drive-through; (2) testimony from Detective Wilbur, confirming the chain of custody to verify that the jury was presented with the same items that were furnished to Mr. Berry on 3 May 2017; and (3) testimony from Mr. Berry that he confirmed that the person in the drive-through lane matched Defendant's driver's license.

¶ 14        Taken in the light most favorable to the State and drawing all reasonable

inferences in favor of the State, the evidence showed that Defendant's driver's license and social security card were given to Mr. Berry along with a forged instrument, in the form of a check. Upon receiving the identifying documents, Mr. Berry utilized the driver's license, which indisputably belongs to Defendant, to confirm that the person in the SECU drive-through matched the person who provided him with the license. During trial, Mr. Berry also confirmed that the individual in the rear seat of the car was clearly visible and within 10 to 12 feet of him when he compared the photograph on the license to the individual in the car—matching Defendant to his driver's license. After confirming Defendant was in fact the individual he was dealing with, Mr. Berry took notice of the check's texture, which he described as "real stiff," as if "it had been damp or wet at some point." Mr. Berry also noticed that the writing on the check did not match the signature.

¶ 15     These suspicions prompted Mr. Berry to contact the member who had "allegedly" written the check to Defendant. The member, Mrs. Austin, reviewed her checkbook and confirmed that the check had been written to a utility company. At trial, she testified that the check was taken from her mailbox the day preceding the offense. After contacting his supervisor, Mr. Berry testified that the car drove away. Thereafter, the sheriff's office was contacted and provided with the original check and Defendant's driver's license and social security card. Detective Wilbur confirmed the chain of custody of Defendant's driver's license and social security card to ensure that

the jury received the same documents that Mr. Berry received on 3 May 2017.

¶ 16    Defendant contends that these facts are similar to *State v. Bass*, 303 N.C. 267, 272, 278 S.E.2d 209, 212 (1981), in which our Supreme Court held that fingerprint evidence is insufficient when the State has failed to present substantial evidence of circumstances from which the jury could find that the fingerprints could only have been impressed at the time the crime was committed. This case, however, is distinguishable from *Bass* for several reasons. In fingerprint cases, the State has an added burden because a person's fingerprints can remain on a surface for long periods of time. *See, e.g., id.* at 270, 278 S.E.2d at 212 ("An expert in the field of fingerprint analysis found eleven points of similarity between the latent print on the screen and the known inked impressions of defendant's prints. The State's witnesses testified that fingerprints can last for months or even years"). Thus, the State must be able to link the fingerprint evidence to the crime. Here, Defendant's driver's license was provided to Mr. Berry, who confirmed that the license matched the person who provided it to him, while committing the underlying offense. Thus, Defendant's identification documents were not simply left in a place for any reason other than Defendant's commission of the crime. Moreover, there is no indication that Defendant left his driver's license or social security card on any other day or time than when the underlying offense was committed as confirmed by Detective Wilbur's testimony.

¶ 17        Thus, considering all evidence in the light most favorable to the State, we conclude that a reasonable jury could have found as fact that Defendant was the perpetrator. Perhaps the strongest evidence introduced against Defendant was Defendant's driver's license and social security cards—documents that are generally (1) kept on one's person and (2) used as key identification documents—which were presented to Mr. Berry, who confirmed that the driver's license, containing a picture of Defendant, matched that of the individual in the car that sat approximately 10 to 12 feet from Mr. Berry. Moreover, the court was without evidence refuting Defendant's presence at SECU, including any evidence supporting Defendant's claim that his license and social security card were stolen.

¶ 18        Accordingly, we conclude that there was sufficient evidence to raise a jury question regarding Defendant being the perpetrator of the offense.

**B. Attorney's Fees**

¶ 19        Defendant also argues that the trial court erred in ordering payment of attorney's fees without affording Defendant the opportunity to be heard. We disagree.

¶ 20        Generally, "[a] challenge to a trial court's decision to impose a condition of probation is reviewed on appeal using an abuse of discretion standard of review." *State v. Allah*, 231 N.C. App. 88, 98, 750 S.E.2d 903, 911 (2013). However, "[a] number of conditions of probation are automatically included in each probationary

judgment unless the trial court specifically elects to exempt the defendant from the necessity for compliance with one or more of those conditions." *Id.* at 97, 750 S.E.2d at 911. For example, N.C. Gen. Stat. § 15A-1343 provides that "as [a] regular condition[ ] of probation, a defendant *must . . .* [p]ay the State of North Carolina for the costs of appointed counsel, public defender, or appellate defender to represent him in the case(s) for which he was placed on probation." N.C. Gen. Stat. § 15A-1343(b)(10) (2019) (emphasis added). Thus, § 15A-1343(b)(10) mandates that a defendant released on probation pay for the costs of appointed counsel.

¶ 21 There is, however, an exception to the mandate. Specifically, N.C. Gen. Stat. § 15A-1343(e) provides that any person placed on probation is required to pay all costs for court appointed counsel, "[u]nless the court finds there are extenuating circumstances[.]" N.C. Gen. Stat. § 15A-1343(e) (2019). When attorney's fees are required, the amount "shall be determined in accordance with rules adopted by the Office of Indigent Defense Services. The court shall determine the amount of those costs and fees to be repaid and the method of payment." *Id.*

¶ 22 Here, as a condition of probation, Defendant was ordered to pay $1,680 for the cost of attorney's fees. This number was based on testimony from Defendant's appointed counsel that he had spent 28 hours on the case. At the time of judgment, the rate paid to counsel assigned to represent an indigent defendant charged with a

Class I felony in Superior Court was $60 an hour.[1] Thus, Defendant's attorney's fee costs, calculated in compliance with N.C. Gen. Stat. § 15A-1343(e), totaled $1,680.

¶ 23 Defendant contends that the court should have afforded him an opportunity to be heard before ordering the payment of attorney's fees. This argument, however, is misplaced. Indeed, this Court has only required notice and an opportunity to be heard when the court has imposed a civil judgment against an indigent defendant for attorney's fees, pursuant to N.C. Gen. Stat. § 7A-455(b). *See, e.g., State v. Jacobs*, 172 N.C. App. 220, 235, 616 S.E.2d 306, 316 (2005) (recognizing that "N.C. Gen. Stat. § 7A-455 (2003) provides that the trial court may enter a civil judgment against a convicted indigent defendant for the amount of fees incurred by the defendant's court-appointed attorney"); *State v. Friend*, 257 N.C. App. 516, 523 809 S.E.2d 902, 907 (2018) (finding that the trial court erred by entering a civil judgment against the defendant, because he was not informed of his right to be heard before the court entered the judgment).

¶ 24 Here, the trial court did not enter a civil judgment to recoup attorney's fees pursuant to N.C. Gen. Stat. § 7A-455(b), but instead, imposed a condition that is automatically included in each probationary judgment. *See* N.C. Gen. Stat. § 15A-

---

[1] The hourly assigned counsel rate for Class E-I felony cases in the superior court, with a final disposition of or after 1 December 2018, is $60. *Counsel Rates*, Office of Indigent Defense Services, https://www.ncids.org/counsel-rates/.

1343(b)(10) (2019) ("As a regular condition of probation, a defendant must . . . [p]ay the State of North Carolina for the costs of appointed counsel, public defender, or appellate defender to represent him in the cases for which he was placed on probation."). Therefore, the court was not required to engage in the colloquy under *Jacobs* and *Friend*, and the trial court's decision must stand unless this Court finds that the trial court abused its discretion. *Allah*, 231 N.C. App. at 98, 750 S.E.2d at 911.

Accordingly, we find that the trial court did not abuse its discretion in ordering that Defendant pay the costs of attorney's fees. Not only was the requirement a regular condition of probation, authorized by N.C. Gen. Stat. § 15A-1343(b)(10), but the court correctly calculated the fee based on rates provided by the Office of Indigent Defense Services, as mandated by N.C. Gen. Stat. § 15A-1343(e).

### III.    Conclusion

For the reasons stated above, we hold that there was substantial evidence that Defendant was the perpetrator of the alleged offense. Thus, the trial court properly denied Defendant's motion to dismiss the charge of uttering a forged instrument. We further hold that the trial court did not abuse its discretion in ordering the payment of attorney's fees. Accordingly, Defendant has failed to demonstrate any error occurred during his trial.

NO ERROR.

Judges DIETZ and COLLINS concur.